UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ADELE SIMOES,

                             Plaintiff,                           **<u>MEMORANDUM AND ORDER</u>**
                                                           11 CV 2032 (DRH) (WDW)

       - against -

TARGET CORPORATION,

                             Defendant.
-----------------------------------------------------------------X
**APPEARANCES:**

**SALENGER, SACK, KIMMEL & BAVARO, LLP**
Attorneys for Plaintiff
180 Froehlich Farms Blvd.
Woodbury, NY 11797
By:    Daniel J. Solinksy, Esq.

**SIMMONS JANNACE, LLP**
Attorneys for Defendant
115 Eileen Way, Suite 103
Syosset, NY 11791
By:    Marvin N. Romero, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff Adele Simoes ("plaintiff" or "Simoes") commenced this negligence action

against defendant Target Corporation ("defendant" or "Target") for injuries suffered when she

allegedly slipped and fell on a liquid substance on the floor of defendant's store located in

Farmingdale, New York.  Presently before the Court are the following motions: (1) plaintiff's

motion under Federal Rule of Civil Procedure ("Rule") 37 for spoliation sanctions in the form of

an adverse inference; and (2) defendant's motion for summary judgment pursuant to Rule 56.

For the reasons that follow, plaintiff's motion for spoliation sanctions is denied, and defendant's

motion for summary judgment is granted.

**BACKGROUND**[1]

The following material facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

On March 14, 2009, Simoes arrived at the Target store located at 100 Willow Park Center, Farmingdale, New York, with her daughter and husband. (Def.'s 56.1 Stmt. ¶ 1.) After being in the store for approximately one hour, Simoes exited with her daughter and remained outside for about five to ten minutes before re-entering. (*Id.* ¶¶ 2-3.) Approximately two to three minutes after re-entry, plaintiff claims that she slipped on a pinkish liquid near the exit doors at the front of the store. (*Id.* ¶¶ 4-6.)

In connection with the liquid on the floor, there was no evidence of footprints or track marks from shopping carts within or around the spill, debris in or near the spill, or odors coming from the spill. (*Id.* ¶¶ 9-11.) Plaintiff did not see any substance on the floor prior to the incident, and neither plaintiff nor a member of her family made a complaint about liquid on the floor before plaintiff fell. (*Id.* ¶¶ 14, 22.) In addition, neither plaintiff nor a member of her family knew what caused the liquid to be on the floor, or how long the liquid was on the floor prior to the incident. (*Id.* ¶¶ 15-20.)

It is Target's policy that if a spill is discovered on the floor, the area is immediately blocked off and cleaned. (*Id.* ¶ 38.) At the time of the incident, then Target employee Mark Louie ("Louie") was the Leader on Duty, meaning that he was in charge of and patrolled the store. (*Id.* ¶¶ 23-25.) Louie did not observe or receive any complaint about liquid or debris on

---

[1] While the facts presented in this Section pertain to defendant's motion for summary judgment, some facts are also relevant to plaintiffs' motion for spoliation sanctions. Additional facts relevant to plaintiff's motion will be addressed *infra*.

the floor where the incident occurred at any time prior to the incident.  (*Id.* ¶¶ 28-29.)

Additionally, Target employee Lusin Sepetci ("Sepetci") served as the Guest Service Team

Leader ("GSTL") at the time of the incident.  (*Id.* ¶ 31.)  As the GSTL, Sepetci was responsible

for the front end of the store.  (*Id.* ¶ 32.)  Sepetci, who was working in the area where plaintiff

slipped, did not see any spills.  (*Id.* ¶¶ 33-34.)  After plaintiff's fall, Louie filled out a Target

Guest Incident Report which indicated that the fall occurred at 9:30 p.m. and that "spotty" "pink

lemonade" was on the floor in the area where plaintiff fell.  (Marvin N. Romero Aff. ("Romero

Aff."), Ex. N.)

## DISCUSSION

### I.     Plaintiff's Motion for Spoliation Sanctions

#### A.     The Law of Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999).  Sanctions against a

party who spoliates evidence may be imposed pursuant to Rule 37(b) as well as through the

court's inherent powers.  *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99,

106-07 (2d Cir. 2002); *West*, 167 F.3d at 779.  In situations where sanctions are warranted,

district courts have broad discretion in "crafting a proper sanction for spoliation."  *West*, 167

F.3d at 779; *see also Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The

determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion

of the trial judge and is assessed on a case-by-case basis.") (internal citation omitted).  The

selected sanction "should be molded to serve the prophylactic, punitive, and remedial rationales

underlying the spoliation doctrine." *West*, 167 F.3d at 779; *see also Chin v. Port Auth. of N.Y. &*

*N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) ("If these elements are established, a district court may, at

its discretion, grant an adverse inference jury instruction insofar as such a sanction would 'serve

[ ] [the] threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk

of an erroneous evaluation of the content of the destroyed evidence on the party responsible for

its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to

where the party would have been in the absence of spoliation.") (quoting *Byrnie v. Town of*

*Cromwell*, 243 F.3d 93, 107 (2d Cir. 2001)).

　　"[A] party seeking an adverse inference instruction based on the destruction of evidence

must establish (1) that the party having control over the evidence had an obligation to preserve it

at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind';

and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a

reasonable trier of fact could find that it would support that claim or defense." *Residential*

*Funding Corp.*, 306 F.3d at 107.  An adverse inference sanction, however, is "an extreme

sanction and should not be imposed lightly." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120

(S.D.N.Y. 2008); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219 (S.D.N.Y. 2003)

("*Zubulake IV*") ("In practice, an adverse inference instruction often ends litigation–it is too

difficult a hurdle for the spoliator to overcome.").

## B.　　The Propriety of Sanctions in this Case

　　In response to Target's motion for summary judgment, plaintiff not only opposes the

motion but cross-moves for spoliation sanctions against Target in the form of an adverse

inference.  In support of her motion, Simoes indicates that her "fall was captured on a

surveillance recording which recorded the area of the accident from the opening of the store until the closing of the store." (Pl.'s Opp'n at 1.) Plaintiff alleges that Target "decided only to preserve the small one-minute portion of the video depicting Plaintiff's actual fall, choosing to destroy the other portion of the day's video which would have shown: a) how the spill occurred, b) how long the spill remained on the floor, and c) if there were prior falls that day – footage crucial to the Plaintiff's case." (*Id.*) Defendant, on the other hand, maintains that "plaintiff has feigned a spoliation issue in an effort to distract the Court from her evidentiary shortcomings," and, in any event, "cannot establish that Target spoliated evidence." (Def.'s Reply at 13.) Each of the elements plaintiff must establish will be addressed in turn.

### 1.    Duty to Preserve

A party seeking an adverse inference instruction based on the spoliation of evidence must first show "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Residential Funding Corp.*, 306 F.3d at 107. A duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd.*, 247 F.3d at 436. "When a party may be deemed to be on notice is a function of the variable chronologies along which issues develop in a law suit." *Abramowitz v. Intra-Boro Acres Inc.*, 1999 WL 1288942 , at *3 (E.D.N.Y. Nov. 16, 1999). "Thus, in one case it may be a discovery request, in another the complaint, in still another correspondence prior to the filing of a complaint, that puts a party on notice that material in its custody is, or reasonably should be considered, admissible evidence which the party has a legal duty to preserve." *Id.*

Pursuant to Target's video recycling policy, any portion of a video not expressly preserved is taped-over after thirty days.  (*See* Solinksy Aff., Ex. 17 at 6.)  Thus, for Simoes to show that Target had a duty to preserve video footage from March 14 beyond the one-minute portion of the video depicting plaintiff's actual fall, she needs to establish that Target should have known that the video may be relevant to future litigation by April 13, 2009.  Attempting to satisfy her burden, Simoes claims that Target's actions on the day of the incident, and subsequent to the incident, show that it had knowledge that litigation was forthcoming.  As for the day of the incident, plaintiff points to record evidence indicating that defendant initiated a search for video surveillance, found the video of the incident, chose to only preserve the footage of the fall itself, and then sent that video clip along with two pictures of the floor and an incident report to Sedgwick Claims Management Services, Inc. ("Sedgwick"), Target's claims representative.  In addition, plaintiff draws attention to the following after-incident conduct in the record: (1) Sedgwick contacting plaintiff regarding the incident by letter dated March 18, 2009; (2) plaintiff's prior counsel, Bragoli & Associates, P.C., contacting Sedgwick by letter dated March 31, 2009, and advising Sedgwick that it represented plaintiff for all claims resulting from injuries and damages as a result of the negligence of Target; and (3) Sedgwick responding by letter dated April 2, 2009, and advising that they were in the process of investigating the incident and needed additional information before making a liability determination.  (Solinksy Aff., Exs. 3-5.)

Based on the present record, Target should have anticipated litigation by April 13, 2009.  On the same day as the incident, Target had knowledge of the slip and fall, including the fact that she fell on her hip and right hand, and that there was liquid on the floor where plaintiff fell.  (Romero Aff., Ex. N.)  The foreseeability of litigation is also reflected in Target's internal

policies which obligate the store manager to seek out video surveillance of the incident, and have it sent with the incident report to its claims representative. *See Matteo v. Kohl's Dep't Stores, Inc.*, 2012 WL 760317, at *3 (S.D.N.Y. Mar. 6, 2012) ("[T]he prospect of litigation in situations [involving a trip and fall] is reflected in Defendants' own internal policies, which direct store managers to retain any video footage of incidents that take place within the store."); *see also Essenter v. Cumberland Farms, Inc.*, 2011 WL 124505 (N.D.N.Y. Jan. 14, 2011) (finding the actions of defendant's manager, which included filling out an accident report, copying the surveillance video onto a DVD and sending it to defendant's risk management, were "steps that a reasonable person would take to preserve information that would be important to litigation"). Moreover, the exchange of letters between Sedgwick, on behalf of Target, and plaintiff's former counsel, further supports the conclusion that Target should have reasonably anticipated litigation within the thirty-day window.

While litigation was foreseeable by April 13, 2009, the question still remains whether defendant breached its obligation to preserve surveillance video which preceded the incident. "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake IV*, 220 F.R.D. at 217. "While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id.* Here, Target was aware that there was liquid on the floor where plaintiff fell and that plaintiff believed it was negligent in addressing the spill. Thus, based on the factual circumstances of this case, Target

should have reasonably known that any evidence pertaining to the conditions of the area in question and the source of that liquid would be relevant to future litigation.[2]  Such evidence would include video preceding the fall itself.  *See Essenter*, 2011 WL 124505, at *7 ("[T]here is no doubt that a video depicting the time before, during, and after an incident is relevant to determine what actually happened at the moment the injury occurred.").  Accordingly, Target breached its duty to preserve surveillance video preceding plaintiff's fall.[3]

## 2.    Culpable State of Mind

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind."  *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y. 2007).  On the issue of culpability, the Second Circuit has determined that a "case-by-case approach to the failure to produce relevant evidence" is warranted since "[s]uch failures occur 'along a continuum of fault-ranging from

---

[2] Target is incorrect when it claims that "[p]laintiff seeks to impose upon Target an obligation to retain footage for an unlimited period prior to the accident."  (Def.'s Reply at 15.)  At most, plaintiff is contending that Target had an obligation to preserve a day's worth of surveillance video captured from the same camera which recorded plaintiff's fall on March 14, 2009.

[3]  Target's reliance on *Gutierrez-Bonilla v. Target Corp.*, 2009 WL 5062116 (E.D.N.Y. Dec. 16, 2009) to support its contention that it was not obligated to preserve the additional surveillance video is misplaced.  The court in *Gutierrez-Bonilla* indicated that "[c]ourts in the Second Circuit have consistently denied motions for spoliation sanctions where the moving party did not seek to inspect the evidence within a reasonable time."  2009 WL 5062116  at *4 (citing cases).  As one of many bases for denying plaintiff's motion for spoliation sanctions the court in *Gutierrez-Bonilla* found that plaintiff neither served Target with a  preservation notice "at any time prior to initiating this litigation or during the course of discovery" nor served any discovery demands "pertaining to preservation or inspection of any videos during the course of discovery."  *Id.*  Unlike the plaintiff in *Gutierrez-Bonilla*, Simoes served a preservation notice upon Target prior to commencement of suit and made numerous demands for the balance of the video during the discovery period.

innocence through the degrees of negligence to intentionally.'" *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)). In this Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or *negligently*.'" *Residential Funding Corp.*, 306 F.3d at 108 (quoting *Byrnie*, 243 F.3d at 109).

Simoes claims that "despite its investigation and its affirmative undertaking to retrieve *some* of the surveillance footage pertinent to this matter, Defendant was at least negligent in failing to preserve the crucial portion of the video." (Pl.'s Opp'n at 7.) In response, Target maintains that plaintiff is unable to meet her burden of establishing that the surveillance footage was recycled with a culpable state of mind because it was "recycled pursuant to Target's normal business practices." (Def.'s Reply at 17.) Although the Court finds that Target acted negligently in failing to preserve the March 14 surveillance video preceding plaintiff's fall, this conclusion is not based on Target affirmative actions, but rather on Target's failure to act.

Some courts have held that "[i]n the absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned for discarding items in good faith and pursuant to its normal business practice." *Gutierrez-Bonilla*, 2009 WL 5062116, at *4 (internal quotation marks and citation omitted). As explained earlier, Target's video surveillance system that existed at the time of plaintiff's fall preserved video for a period not exceeding thirty days. Although no litigation had been brought against Target prior to April 13, 2009 (thirty days after the incident), Target, through its assigned claims representative, had notice of a specific claim. In the March 31, 2009 letter from plaintiff's prior counsel, Sedgwick was advised that it "represents the above-named *claimant* for all claims resulting from injuries and/or damages as a result of the *negligence*

of your insured" in connection with the March 14, 2009 incident.[4]  (Solinksy Aff., Ex. 4 (emphasis added).)   Because the Court finds that this letter put Target on notice of plaintiff's purported negligence claim in connection with her March 14 slip and fall, the fact that Target recycled the March 14 video surveillance pursuant to its normal business practice does not, *per se*, absolve it of spoliation sanctions.

Instead, "[o]nce a party reasonably anticipates litigation, it must suspend its routine [ ] retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant [materials]."  *Zubulake IV*, 220 F.R.D. at 218; *accord  Toussie v. Cnty. of Suffolk*, 2007 WL 4565160, at *7 (E.D.N.Y. Dec. 21, 2007).  In this case, Target did not suspend its routine video surveillance destruction policy notwithstanding its duty to preserve evidence prior to the time the March 14 video surveillance was recycled.  Therefore, the Court finds that Target was negligent in its failure to preserve the additional video footage.  *See Poux v. Cnty. of Suffolk*, 2012 WL 1020302, at *20 (E.D.N.Y. Mar. 23, 2012) (concluding that if defendant had an obligation to preserve videotapes, its conduct in recycling those tapes pursuant to Citibank's tape retention policy was, at most, negligent).

The Court, however, does not find that Target was grossly negligent when the video surveillance preceding plaintiff's fall was recycled.[5]  In attempting to show that Target was grossly negligent, plaintiff relies exclusively on *Krastov v. Town of Greenburgh*, 2012 WL

---

[4]  The letter identifies Adele Simoes as the claimant and Target Corporation as the insured.  (Solinksy Aff., Ex. 4.)

[5]  The distinction between conduct that is negligent and conduct that is grossly negligent becomes significant when analyzing the relevance element to a spoliation claim because relevance may be presumed where the spoliator acted with gross negligence in destroying the evidence at issue.  S*ee Residential Funding Corp.*, 306 F.3d at 109.

2719663 (S.D.N.Y. July 9, 2012).  That case, however, is readily distinguishable.  In *Krastov*, an employee of the defendant was tasked with making a recording of the video surveillance for the date and time at issue.  *Id.* at *3.  However, unbeknownst to the defendant employee, the video surveillance system's time stamp was set to Pacific Standard Time.  *Id.* at *4.  As a result, the recording only captured video after the alleged events occurred.  *Id.*  By the time defendants realized the error, the video surveillance had been automatically destroyed by the defendant's system.  *Id.*  Although the defendant admitted that it was negligent in preserving the video, the court determined that defendant was grossly negligent because defendant and its employees: (1) "took no steps to put on hold the [defendant's] normal process for the destruction of video recordings once he received either Plaintiff's or Plaintiff's counsel's notice of claim, either of which should have reasonably led [defendant] to anticipate litigation;" (2) the defendant employees "who presumably should have been familiar with how the video surveillance system worked—were all unfamiliar with how the time stamp worked, an essential part of recalling video from a particular incident;" and (3) the defendant "apparently did nothing to secure the video" after receiving plaintiff's notice of claim.  *Id.* at *5.

Aside from not admitting to any culpability, only one of the three reasons articulated by the Court in *Krastov* is present here.  Contrary to the plaintiff's contention, Target was not unfamiliar with its video surveillance system.  And, unlike the defendant in *Krastov* who botched the copying process, Target successfully copied the portion of the surveillance video which it sought to copy.  It would also be improper to conclude that Target "did nothing" to secure video of the incident in dispute.  Pursuant to Target's protocol, after every incident the Leader on Duty was supposed to locate video of the incident.  (Romero Aff., Ex. I ("Louie Dep.") at 56-57.)

After plaintiff fell, the Leader on Duty called the Target Protection Specialist who reviewed video of the incident through Target's video surveillance and made a copy of that video. (*Id.*)

What remains, then, is the fact that Target took no steps to halt its normal process of recycling video recordings. In other words, Target failed to put in place a litigation hold. The Second Circuit has "reject[ed] the notion that a failure to institute a 'litigation hold' constitutes gross negligence *per se*." *Chin*, 685 F.3d at 162. The Court, therefore, declines to find that Target was grossly negligent in allowing the surveillance video to be taped over.

### 3.    Relevance

Although Target negligently recycled the March 14 surveillance video preceding plaintiff's fall, Simoes has failed to show that this additional footage would have been beneficial to her claim.

The last element of a spoliation claim requires the innocent party to establish that the destroyed materials were relevant to its claims or defenses. *See Residential Funding Corp.*, 306 F.3d at 108. For purposes of this element, *relevance* "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Id.* at 108-09. The moving party "must show through extrinsic evidence that the destroyed evidence would have been favorable to its case." *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 112 (E.D.N.Y. 2012); *see also Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J.*, 601 F. Supp. 2d 566, 570 (S.D.N.Y. 2009) ("For the purpose of spoliation, 'relevant' means that the evidence must be of the sort that a reasonable jury could find harmful to the spoliator's case.").

In arguing that relevance has been met, plaintiff articulates reasons why the missing videotape would be germane to a case where constructive notice of a dangerous condition, for purposes of proving a negligence claim, is at issue. (Pl.'s Sur-Reply at 11.) For example, plaintiff asserts that the additional footage would have shown how the spill occurred, how long the spill remained on the floor, if anyone else fell that day, or if any Target employee inspected the area where plaintiff fell. This argument, however, misses the mark. To receive an adverse inference, plaintiff is obligated to provide evidence showing that the surveillance video preceding the fall would have been favorable to her case. This Simoes fails to do.

As an initial matter, it is far from certain that the surveillance video would have captured how the liquid ended up on the floor or how long it remained on the floor. Indeed, upon viewing the surveillance video of plaintiff's fall, the pink liquid which she purportedly slipped on is not visible. (Romero Aff., Ex. O.) Even assuming, however, that the video preceding plaintiff's fall would have indicated how the pink liquid ended up on the floor or how long it remained there, such additional footage could have been favorable to either party's case. For instance, while it is possible that the recycled video would have shown that a customer spilled the liquid on the floor hours before the incident, it is equally possible that the video would have shown that the spill occurred just moments before plaintiff's fall. The same holds true for the other reasons articulated by Simoes for why the recycled video is supposedly relevant.[6] In addition, the record evidence identified by plaintiff concerning the condition of the floor at the time of the fall and the

---

[6] For example, the recycled video could have shown that: (1) Target employees passed by the area where plaintiff fell moments before the incident and observed that the floor was free of any foreign substances; and (2) no other customers slipped or fell while traversing the same area where plaintiff's incident occurred.

presence of a "sticky" liquid does not support the contention that the surveillance video preceding the fall would have been favorable to her negligence claim. Because the present record does not satisfy the relevance element, plaintiff's motion for spoliation sanctions in the form of an adverse inference must fail.

## II.     *Defendant's Motion for Summary Judgment*

### A.     *Applicable Standard*[7]

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

---

[7] Although New York substantive law provides the elements of plaintiff's negligence cause of action, "federal procedural law provides the standard for deciding whether Target is entitled to summary judgment on that cause of action." *Casierra v. Target Corp.*, 2010 WL 2793778, at *1 (E.D.N.Y. July 12, 2010).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot "rely[] on the allegations in his or her pleadings, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no

genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. *Negligence*

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)). "In order to prove breach in a slip and fall case, the burden is on the plaintiff to establish that the defendant 'created the condition which caused the accident, or that the defendant had actual or constructive notice of the condition which caused the fall.'" *Casiano v . Target Stores*, 2009 WL 3246836, at *3 (E.D.N.Y. Sept. 24, 2009) (quoting *Bykofsky v. Waldbaum's Supermarkets, Inc.*, 210 A.D.2d 280, 281, 619 N.Y.S.2d 760 (2d Dep't 1999)). "The mere existence of a foreign substance, without more, is insufficient to support a claim of negligence." *Segretti v. Shorenstein Co., East, L.P.*, 256 A.D.2d 234, 234, 682 N.Y.S.2d 176 (1st Dep't 1998).

In support of its motion for summary judgment, Target contends that plaintiff cannot meet her burden of establishing a *prima facie* claim of negligence because she has not demonstrated that Target breached its duty of care by creating or having notice of the defective condition. (Def.'s Mem. at 2.) Here, Target is not contending that it did not owe a duty to Simoes, presumably its duty to maintain the premises in a safe condition. Nor is Simoes claiming that Target caused the pink liquid, apparently lemonade, to be on the floor, or that any employee actually knew about the spill prior to plaintiff's fall. Thus, this case turns on whether

Target breached its duty to plaintiff by having constructive notice of the spilled liquid.

### 1. Constructive Notice

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986). "A 'general awareness' that a dangerous condition 'may be present' is legally insufficient to charge defendant with constructive notice of the specific condition that caused plaintiff's injuries." *Silverman v. United States*, 2008 WL 1827920, at *14 (E.D.N.Y. Mar. 28, 2008). Thus, in order to survive summary judgment, a plaintiff "is required to provide some basis for an inference that the spill was there long enough to blame Target for the accident." *Casierra*, 2010 WL 2793778, at *3; *see also Cousin v. White Castle Sys. Inc.*, 2009 WL 1955555, at *8 (E.D.N.Y. July 6, 2009) ("[P]laintiff must present proof of either how the substance got there or how long it was there before the fall."). In this case, plaintiff has not presented any such proof.

As an initial matter, the Court need not address the evidence put forth by Target to support its theory that the spill did not exist for any sufficient length of time before plaintiff's fall. This is so because for purposes of Rule 56 a moving party who does not carry the ultimate burden of proof on an issue at trial may satisfy its initial burden by pointing to the lack of evidence regarding an essential element of the non-movant's claim.[8] *See Brady*, 863 F.2d at

---

[8] In this regard, Rule 56 differs from its New York state court equivalent N.Y. CPLR 3212(b). *See Casierra*, 2010 WL 2793778, at *1 n.1 (concluding that unlike Rule 56, "a defendant in a slip-and-fall action in state court cannot prevail on summary judgment by simply pointing to gaps in the plaintiff's case. Rather, the defendant must satisfy a threshold burden by presenting affirmative evidence that it neither created the hazard nor had constructive notice of

210-11; *see also Painchault*, 2011 WL 4344150, at *3 ("Since, under New York law, Painchault would bear the burden at trial of showing that Target had actual or constructive notice of the condition that caused her fall, the court must grant summary judgment if the record contains no evidence establishing a genuine issue of material fact with respect to causation, actual notice or constructive notice.") (internal quotation marks and citation omitted); *Casierra*, 2010 WL 2793778, at *1 ("A movant may demonstrate the absence of material factual dispute simply by pointing to the lack of evidence in support of an essential element of the plaintiff's claim."). Here, even assuming that there are factual disputes as to whether the spill was visible and apparent, Simoes must also produce some evidence that the spill was present long enough for Target to bear responsibility for plaintiff's fall. This, she fails to do.

Often, a slip-and-fall plaintiff meets his or her burden of establishing constructive notice "by producing circumstantial evidence that the defective condition existed for a period of time before the accident." *Casierra*, 2010 WL 2793778, at *2. Plaintiff claims that circumstantial evidence going to the origins of the spill and how long the spill remained on the floor can be found from the proximity of the spill to soda fountains located in Target. Specifically, plaintiff states that "based on the proximity of the fall to the soda fountains and the substance, pink lemonade, commonly disbursed from soda fountains, it is reasonable for a finder of fact to infer that the liquid originated from that soda fountain." (Pl.'s Opp'n at 24 (internal citations

it." (internal citations omitted); *see also Painchault v. Target Corp.*, 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011) ("Under New York law, a defendant moving for summary judgment must make a prima facie showing that it did *not* create the dangerous condition or that it had no actual or constructive notice. However, this burden-shifting standard does not apply here, since, under the federal standard, the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions.") (internal quotation marks and citations omitted).

omitted).)  This contention, however, is bereft of a factual basis.  In fact, there is no evidence establishing that the soda fountains at issue contained pink lemonade – or some other pink-based liquid – as an option the night of plaintiff's fall.  Therefore, to infer that the spilled liquid originated from Target's soda fountain, as distinct from some other source such as a customer bringing the liquid into the store, would be based solely on speculation and conjecture.

Plaintiff also maintains that the "sticky" pink liquid which she slipped on provides circumstantial proof of how long the spill remained on the floor.  The purported stickiness of a substance, however, is insufficient to establish a defendant's constructive notice.  *See, e.g.*, *Robinson v. Wal-Mart Stores, Inc.*, 37 F. Supp. 2d 605, 607-08 (W.D.N.Y. 1999) (finding evidence that the spilled liquid was sticky did not create an issue of fact regarding constructive notice), *aff'd* 242 F.3d 367 (2d Cir. 2000); *see also Torres v. United States*, 2011 WL 1432035, at *3 (S.D.N.Y. Apr. 11, 2011) ("New York courts have consistently held that plaintiffs' description of a dangerous substance alone are not sufficient to establish the defendants' constructive notice.").  While plaintiff argues that the stickiness of a substance may be considered among other facts to establish constructive notice, the record is devoid of any facts tending to show that the liquid was on the floor for any appreciable length of time.  On the evidence presented, the liquid that purportedly caused plaintiff's fall could have been on the floor for a long period of time, or it could have occurred only moments before plaintiff slipped on it.  Consequently, plaintiff has not identified any evidence that raises a triable issue of fact as to how long the spill remained on the floor.

## 2.     Remaining Arguments

Notwithstanding this lack of evidence, plaintiff argues that defendant's motion for summary judgment should still be denied based on (1) Target's failure to conduct a reasonable inspection of the area where plaintiff fell; and (2) the missing video surveillance. The Court is not persuaded by either contention.

Simoes notes that "New York common law obligates a landlord or owner 'to use a reasonable care to inspect and repair common areas,' and charges such landlord or owner with constructive 'notice of the dangerous conditions which a reasonable inspection would have discovered." *Williams v. Matrix Fin. Servs. Corp.*, 158 F. App'x 301, 303 (2d Cir. 2005) (quoting *Wynn ex rel. Wynn v. T.R.I.P. Redevelopment Assocs.*, 296 A.D.2d 176, 181, 745 N.Y.S.2d 97 (3d Dep't 2002)); *see also Torres v. United States*, 2010 WL 5422547, at *3 (S.D.N.Y. Dec. 23, 2010) ("Under New York common law, landlords or owners of a property, commercial or residential, have an obligation to maintain the common areas in a reasonably safe condition and have a duty to use reasonable care to inspect and repair common areas."). Relying on this legal doctrine, plaintiff asserts that Target should be charged with constructive notice of the spilled liquid due to its failure to conduct reasonable inspections of the front end of the store on the day the accident occurred. Plaintiff's reliance, however, is misplaced as the record is devoid of any evidence suggesting that Target was the owner or landlord of the premises at issue. To the contrary, Target denied that it owned the premises in its Answer and, instead, admitted that it was a lessee. (*Compare* Compl. ¶¶ 5-6 *with* Answer ¶¶ 5-6.) In addition, plaintiff has not cited to any authority which supports her position that a "common area" – which has been defined to include stairways, *see, e.g.*, *Williams*, 150 F. App'x at 301, and parking lots, *see, e.g.*,

*Tuthill v. United States*, 270 F. Supp. 2d 395, 397-98 (S.D.N.Y. 2003) – also includes the floor inside Target.

Finally, relying exclusively on *Hoilett v. Pathmark Stores, Inc.*, 2004 WL 287673 (S.D.N.Y. Feb. 11, 2004), Simoes claims that "a missing or destroyed surveillance video which would depict the crucial portion of the incident would, in and of itself, be sufficient to defeat summary judgment.'" (Pl.'s Opp'n at 14.) This contention, however, presumes that the recycled portions of the March 14 surveillance video would have depicted "crucial" portions of the incident. Moreover, the court in *Hoilett* indicated that there were material issues of fact going to defendant's constructive notice "due, among other things, to the unavailability of the store surveillance video tape." 2004 WL 287673, at *3. Therefore, and contrary to the plaintiff's contention, *Hoilett* does not stand for the proposition that the unavailable video "in and of itself" is a basis to deny a motion for summary judgment. In fact, plaintiff's interpretation of the holding in *Hoilett* would run afoul of the federal summary judgment standard in looking to the evidentiary burdens parties have at trial and allowing a movant to succeed in slip-and-fall cases by pointing to the lack of evidence regarding an essential element of a plaintiff's cause of action.

In sum, there is no genuine issue of material fact regarding Target's lack of constructive notice and plaintiff has failed to provide an alternative basis for denying defendant's motion for summary judgment. Accordingly, defendant's motion is granted.

## CONCLUSION

For the reasons set forth above, Simoes' motion for spoliation sanctions is denied, and Target's motion for summary judgment is granted.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
        June 14, 2013

_____/s/_____
Denis R. Hurley
Unites States District Judge